UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

**JOY MURCHISON-ALLMAN AND TERENCE ALLMAN**

    Plaintiffs,   14-cv-2160

-against-   SECOND AMENDED
    COMPLAINT AND
    JURY TRIAL DEMAND

**POLICE OFFICER HENRY ADAMES;
POLICE OFFICER ANTHONY DISIMONE;
POLICE OFFICER JOHN RAMOS;
AND SERGEANT PETER MCMANN.**

    Defendants.
---------------------------------------------------------------X

    **NOW COMES** Plaintiffs, **JOY MURCHISON-ALLMAN** and **TERENCE ALLMAN** by and through their attorneys, **BONJEAN LAW GROUP, PLLC**, and for cause of action against the defendants, both jointly and severally, respectfully states as follows:

## INTRODUCTION

    1.    On August 15, 2012, the Plaintiffs' apartment in the County of Bronx, New York was violently raided by Defendants and other plain-clothes New York City Police officers.

    2.    Defendant officers destroyed the front door to the apartment, ripped through the family bedrooms, dumping the contents of dressers throughout the apartment, pulled curtains off their rods, strew valuable baseball cards and other personal items throughout the home, cut up mattresses, urinated in the toilet and shoved Plaintiffs' and their child's coats into the toilet, and otherwise ransacked the apartment.

    3.    The Defendant officers failed to produce a search warrant to justify the raid and no probable cause existed to justify the search. Defendants Adames, DiSimone, Ramos, and

McMann falsified a drug investigation to justify obtaining a search warrant for Plaintiffs' apartment, even though, no probable cause existed to justify the intrusion.

4. No contraband was recovered from the Plaintiffs' apartment except a box of old ammunition that belonged to Plaintiff's ex-boyfriend and a small amount of marijuana. Plaintiffs were arrested and spent approximately 31 hours in custody. Charges against Plaintiffs stemming from the recovery of those items were ultimately dismissed.

5. This suit follows.

## PARTIES

6. Plaintiffs Joy Murchison-Allman and Terrance Allman are adult residents of Bronx County, New York.

7. Defendant CITY OF NEW YORK, NEW YORK ("CITY"), is a municipality chartered by the State of New York and as such is a political subdivision of the State of New York and among its other functions operates and maintains a law enforcement agency known as the New York City Police Department ("NYPD"). The City of New York is under a duty to run its policing activities in a lawful manner so as to preserve the peace of the City of New York and to preserve to its citizens the rights, privileges and immunities granted and secured to them by the constitutions and the laws of the United States and the State of New York.

8. Defendants ADAMES, DISIMONE, RAMOS, and MCMANN were at all times relevant herein, officers, employees and agents of the New York City Police Department, a municipal agency of the CITY OF NEW YORK. Defendant ADAMES, DISIMONE, RAMOS, and MCMANN are being sued individually and in their official capacities. At all times relevant herein, Defendants ADAME, DISIMONE, RAMOS, and MCMANN were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and

officer of the Police Department and otherwise performed and engaged in conduct incident al to the performance of their lawful functions in the court of their duties. They were acting for and on behalf of the CITY at all times relevant herein with the power and authority vested in them as officers, agents, and employees of the Defendant CITY and incidental to the pursuit of their duties as officers, employees and agents of the Defendant CITY.

## JURISDICTION AND VENUE

9. Each and all of the acts of defendants were performed under the color and pretense of the constitutions, statutes, ordinances, regulations, customs, and usages of the United States of America, the State of New York, and the City of New York, and under authority of their office as police officers for the City of New York.

10. The incidents which give rise this cause of action occurred within this jurisdiction within three years of the filing of this Complaint.

11. Venue is proper in this venue pursuant to 28 U.S.C. § 1391 as all of the defendants are residents of this district and/or all of the acts or omissions which give rise to this cause of action occurred within this district.

12. Jurisdiction is proper pursuant to federal question jurisdiction, 28 U.S.C. § 1331, 28 U.S.C § 1343(a)(3)(4) and 42 U.S.C. § 1983. Plaintiff further invokes the pendent and supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

13. Plaintiff avers that defendants do not have immunity for violating the civil rights of citizens.

**FACTUAL ALLEGATIONS**

14. Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

15. On or about August 15, 2012 at roughly 6:30 a.m., in the City of New York, County of Bronx, Plaintiffs, an African-American couple, were in their apartment located at 889 Hunts Point Avenue, Apt. 34, County of Bronx, State of New York.

16. Plaintiff Allman who was in the bathroom heard an unfamiliar "drilling" sound coming from the front door. Startled, Allman went to check on his wife who was in the master bedroom toward the rear of the apartment.

17. Before Plaintiff Allman could reach the master bedroom, Allman heard loud bangs at the front door consistent with someone breaking into the apartment.

18. Allman turned around and began walking toward the front door when the door flew open and numerous plain clothes police officers began entering the apartment with guns drawn. The officers did not announce themselves or display any police badges.

19. Meanwhile, Murchison-Allman had run into the hallway dressed in her underwear and a t-shirt and observed officers entering the home with guns drawn and pointed at her husband, Plaintiff Allman.

20. Multiple officers, including Defendants, ordered Plaintiff Allman, dressed only in underwear, to get on the ground and Allman immediately began questioning why the officers had invaded his home.

21. Murchison-Allman encouraged her husband to get on the ground and comply with

the officers' demands. Allman, who suffered from an existing shoulder injury, complied with the officers' demands as one officer roughly placed him on the ground face down.

22. Several officers, including Defendants, stood over Plaintiffs with their guns drawn.

23. After 10 minutes or less, one officer yelled "clear" and another officer, who appeared to be in control of the operation, entered the home with yet another officer. The officer, and a Defendant, who appeared to be in charge walked over to the Plaintiffs who were still laying prone on the ground, ripped down a temporary curtain that separated the living room from the hallway and entered the living room and then the master bedroom.

24. The officer who appeared to be in charge ordered another officer to let the Plaintiff up off the ground and then ordered the same officer to handcuff the Plaintiffs.

25. Plaintiffs were escorted into the living room. Murchison-Allman was placed in a chair as Allman remained standing. Both Plaintiffs repeatedly asked the police officers what legal authority they had to enter their home, why they were being arrested, and why their home was being searched.

26. Defendants refused to provide any search warrant or any legitimate justification for the entry. However, one Defendant told Plaintiffs that they had failed to pay their rent and that they were not obligated to show a search warrant since "this [was] not the movies."

27. The officer who appeared to be in charge accused Plaintiffs of having crack, coke, and dope, stating "and we are going to find it."

28. In complete shock, Plaintiffs' told the officer in sum and substance that their accusation was ludicrous and that they had no crack or coke in their apartment and that they were

working people with strong community ties.

29. The officer who appeared to be in charge went immediately to the master bedroom and lifted up the bed, both mattress and box spring. Finding nothing, the officer in charge dropped the bed and walked out of the apartment.

30. Officers began searching the home while Plaintiffs remained handcuffed and dressed in underwear. Eventually, one officer removed the Plaintiffs' handcuffs and provided them with Allman's clothing. Plaintiff Murchison-Allman who was menstruating asked for her own clothes, including a bra, the officer refused her request. Murchison-Allman who was menstruating also asked to use the bathroom. That request too, was denied.

31. The officer re-handcuffed Plaintiff and then led Plaintiffs downstairs into a waiting unmarked van. The van contained three other individuals who were handcuffed.

32. Plaintiffs repeatedly asked why they were being arrested and one of the officers told them that "the judge wanted to see them." At no point did the officers show Plaintiffs a search warrant or police badge. The officers also refused to provide their names.

33. The officers left Plaintiffs in the van for approximately 10 minutes and then returned to the van and with a caravan of unmarked vehicles drove Plaintiffs to another residential building on Longfellow Ave.

34. The officers existed the van and entered the building on Longfellow for roughly 30 minutes.

35. Officers brought additional people out of the building handcuffed and placed them in another van. Plaintiffs were then transported to the 41st Precinct.

36. Plaintiffs were in custody for approximately 31 hours.

37. Plaintiffs later learned that they were charged with the offenses of Possession of Ammunition and Unlawful Possession of Marijuana. Both charges were later dismissed.

38. Plaintiffs later returned to their home and found that the front door had been damaged and that the locks had been changed.

39. Murchison-Allman entered her home through a window via a neighbor's apartment. The Plaintiffs discovered that their house had been completely ransacked. Clothes were strewn throughout the apartment. Residual urine sat in the toilet along with a floating cigarette butt and Plaintiffs' coats which had been hanging in a closet directly adjacent to the bathroom had been shoved into the urine-filled toilet.

40. The shades of Plaintiffs' child's bedroom were pulled off of the rolls. Plaintiffs' daughter's dresser was ripped apart and her mattress cut. A valuable collection of baseball cards was strewn behind the couch and numerous cards were missing from the collection.

41. Plaintiffs later learned that the apartment directly underneath Plaintiffs' apartment on the second floor had also been raided by police that same day.

42. It took Plaintiffs several months to restore their family home to allow their school-aged children to return to the home. During that period of time, the children resided with family members elsewhere.

43. Plaintiffs defended against the charged offenses for 15 months which were ultimately dismissed on November, 2013.

44. Defendants ADAMES, DISIMONE, RAMOS, and MCMANN, claimed to have conducted a drug investigation that justified obtaining a search warrant for Plaintiffs' home. Specifically, the Defendants claim that a confidential informant conducted multiple undercover

buys from Plaintiffs' home in exchange for money.

45. Defendants claim that on four separate occasions the CI made undercover purchases of narcotics from Apartment 34. On all four occasions the narcotics were purportedly sold to the CI by either a 5'5" Hispanic woman in her 30s or a 5'5" Hispanic man in his 20s.

46. Prior to obtaining a search warrant, Defendants conducted computer checks that revealed that Apartment 34 was occupied by Plaintiffs, Joy Murchison-Allman, a 32-year old black woman, and her husband, Terence Allman, a 39-year old 6'2" black man. Ms. Murchison-Allman had resided in the apartment for over 10 years.

47. On information and belief, Defendants either falsified the drug investigation that led to the issuance of the search warrant, did nothing to corroborate the confidential informant who purportedly made the drug purchases from Apartment 34 and/or purposefully ignored facts that showed that no drug sales were being conducted from Apartment 34.

48. On information and belief, Defendant ADAMES has a pattern of practice of submitting false affidavits in support of search warrants and stealing property from apartments in which he has executed search warrants. Since 2008, Defendant ADAMES has been the subject of five internal affairs investigations related to allegations of missing property and has been sued on four other occasions.

## COUNT I

## FEDERAL CONSTITUTIONAL VIOLATIONS AGAINST DEFENDANTS ADAMES, DISIMONE, RAMOS, AND MCMANN

49. Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set

forth herein.

50. Defendants committed the above described actions and/or omissions under the color of law and by virtue of their authority as law enforcement officers for the City of New York and substantially deprived plaintiff of his clearly established rights, privileges and immunities guaranteed to him as a citizen of the United States in violation of 42 U.S.C. § 1983, and deprived plaintiff of the rights guaranteed to him under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, including but not limited to:

    a. freedom from unlawful search and seizure;

    b. freedom from arbitrary government activity which shocks the conscience of civilized society; and

51. As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs' constitutional rights were violated and Plaintiffs were injured and sustained substantial injuries.

52. The actions and/or omissions of defendants, complained herein were unlawful, conscience shocking, unconstitutional, and performed maliciously, recklessly, fraudulently, intentionally, willfully, wantonly in bad faith, and in such a manner to entitle Plaintiffs to a substantial award of punitive damages against defendants.

## COUNT TWO

## PUNITIVE DAMAGES AGAINST DEFENDANTS ADAMES, DISIMONE, RAMOS, AND MCMANN

53. Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set

forth herein.

54. The actions and/or omissions of defendants ADAMES, DISIMONE, RAMOS, and MCMANN and complained of herein were unlawful, conscience shocking, and unconstitutional and performed maliciously, recklessly, fraudulently, intentionally, willfully, wantonly, in bad faith, and in such a manner to entitle the Plaintiff to a substantial award of punitive damages against defendants.

## DAMAGES

55. Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

56. As a direct and proximate result of the aforementioned actions and omissions of the defendants, the Plaintiff was injured and damaged. The damages for which the Plaintiff seeks compensation from the defendants, both jointly and severally, include, not are not limited to, the following:

   a. emotional pain and suffering of a past, present, and future nature;

   b. loss of enjoyment of life of a past, present, and future nature;

   c. fright, fear, aggravation, humiliation, anxiety, and emotional distress of a past, present, and future nature as a result of false charges being placed on Plaintiff and the injuries sustained as a result of the illegal actions of defendants.

   d. attorney's fees pursuant to 42 U.S.C. § 1988;

   e. punitive damages against applicable defendants;

   f. attorney's fees and costs in dealing with the criminal charges placed against

Plaintiff;

g. pre-and post-judgment interest;

h. declaratory judgment and injunctive relief holding that the policies, practices or customs of the City of New York, NYPD and defendants ADAMS, DISIMONE, RAMOS, and MCMANN complained of herein are illegal and unconstitutional;

i. preclusion of defendants ADAMES, DISIMONE, RAMOS, and MCMANN from serving in the capacity of law enforcement officers; and

j. all such relief, both general and specific, to which Plaintiff may be entitled to under the premises.

## PRAYERS FOR RELIEF

57. Plaintiff hereby incorporates, in its entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

58. **WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues the defendants both jointly and severally, for his personal injuries and prays for a judgment against the defendants for compensatory damages solely in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which he may be entitled under the premises.

59. **WHEREFORE, PREMISES CONSIDERED**, Plaintiff sues defendants ADAMES, DISIMONE, RAMOS and MCMANN for punitive damages in an amount solely to be determined by a jury as reasonable and for all such further relief, both general and specific, to

which he may be entitled under the premises.

60. **A JURY IS RESPECTFULLY DEMANDED TO TRY THE ISSUES ONCE JOINED.**

          Respectfully submitted,

          **Bonjean Law Group, PLLC**
          1000 Dean St., Ste. 422
          Brooklyn, NY 11238
          (718) 875-1850 (tel)
          (718) 230-0582 (fax)

          <u>S/JENNIFER BONJEAN</u>
          Jennifer Bonjean